IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

SABRINA Z.,[1]

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

Civil Action 2:22-cv-2458
Magistrate Judge Chelsey M. Vascura

**OPINION AND ORDER**

    Plaintiff, Sabrina Z., ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 9); the Commissioner's Memorandum in Opposition (ECF No. 10); Plaintiff's Reply (ECF No. 11); and the administrative record (ECF No. 8). For the reasons that follow, the Commissioner's non-disability determination is **OVERRULED** and this matter is **REMANDED** pursuant to Sentence 4 § 405(g).

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

I.  BACKGROUND

Plaintiff protectively filed her DIB application on May 19, 2019, and her SSI application on August 26, 2019,[2] alleging that she had been disabled since July 10, 2002. After those applications were denied administratively at the initial and reconsideration levels, a telephonic hearing was held on March 24, 2021, before Administrative Law Judge Deborah F. Sanders ("the ALJ") who issued an unfavorable determination on April 2, 2021. That unfavorable determination became final when the Appeals Council denied Plaintiff's request for review in April 2022.

Plaintiff seeks judicial review of that final determination. She submits remand is warranted because the ALJ erred when assessing medical opinion evidence. (Pl.'s Statement of Errors 7–10, ECF No. 9.) The Court agrees.

II.  RELEVANT RECORD EVIDENCE[3]

The record reflects that in February 2020, Plaintiff reported experiencing pain in her "bottom area" for about a month. (R. 631.) An examination showed that she had an anal fissure. (*Id*.) Plaintiff sought treatment for her fissure from another provider in May 2020 and elected to undergo a sphincterotomy. (R. 850, 855.) That procedure was supposed to take place in April 2020, but it was delayed because of covid. (R. 804.) During that delay, Plaintiff developed new symptoms, including difficulty evacuating, urinary incontinence, and a feeling that something

---

[2] Plaintiff previously filed a DIB application in 2007 and a SSI application in 2017. (R. 15.) Because Plaintiff's current DIB application was filed more than two years after her prior DIB application was denied at the initial level, and her current SSI application was filed more than four years after her prior SSI application was denied at the initial level, the ALJ determined that there was no basis for reopening either of Plaintiff's prior applications. (*Id*.) Plaintiff does not challenge this determination.

[3] Discussion of the evidence is limited to those portions of the record bearing directly on Plaintiff's allegation of error.

was falling out of her vagina. (R. 831.) Plaintiff was referred to a urogynecologist for a possible cystocele. (R. 831.)

Plaintiff's sphincterotomy took place on July 10, 2020. (R. 804–16.) At follow-up visits, Plaintiff's incision appeared to be healing, but she reported symptoms that suggested that she had incomplete emptying and levator spasms. (R. 798.) After her sphincterotomy, Plaintiff also regularly reported fecal incontinence with liquid stool. (R. 793, 762, 737, 700.)

On August 12, 2020, Plaintiff saw a urogynecologist (R. 792.) Plaintiff reported symptoms of mixed urinary urge and incontinence, with urge predominant. (R. 796.) An examination revealed evidence of stage 2 anterior prolapse and pelvic floor dysfunction. (R. 796, 797.) Plaintiff could not, however, participate in physical therapy for her pelvic floor dysfunction until her sphincterotomy was completely healed. (R. 796.)

After that consultation, Plaintiff reported ongoing incontinence, leaking, and that needing to be close to a bathroom limited her activities. (R. 789, 782.) Plaintiff's urge symptoms regularly included urinary frequency, urgency, urge-related incontinence, leaking, nocturia, and occasional enuresis. (R. 793, 762, 737, 700.) Plaintiff also regularly reported prolapse symptoms such as feeling like her bladder was hanging out or feeling constant pressure on her genitals. (R. 793, 762, 736.) In October 2020, she opted to move ahead with surgery for her prolapse issues. (R. 736.)

On February 26, 2021, Plaintiff underwent a total vaginal hysterectomy with bilateral salpingectomy, uterosacral ligament suspension, anterior colporrhaphy, posterior colporrhaphy, perineorrhaphy, and cystourethroscopy. (R. 1177.) Plaintiff failed a post-operative test to see if she could effectively void. (R. 1166.) She was nevertheless allowed to go home with a foley catheter and was scheduled to return to have the catheter replaced. (*Id.*)

On March 2, 2021, Plaintiff was able to void successfully during an office visit. (R. 1136.) But later that night, she went to the ER because she was unable to void again on her own and needed another foley catheter. (R. 1136, 1147–49.) On March 5, 2021, Plaintiff was diagnosed with a urinary tract infection, and she reported constipation. (R. 1136, 1147.) And although Plaintiff was able to successfully void during an office visit on March 8, 2021 (R. 1138, 1141–42), she sought treatment again on March 9, 2021, for recurrent retention and reported that despite a strong urge to void, she had been unable to do so (R. 1136). A provider wrote that the results of an examination were consistent with myalgia/spasm which were likely causing an intermittent obstruction to Plaintiff's voiding. (R. 1137–38.) The provider also wrote that Plaintiff's pelvic floor myalgia/dysfunction had worsened after her prior sphincterotomy for an anal fissure; and had worsened again after Plaintiff's recent hysterectomy; and that Plaintiff was now having intermittent urinary retention due to her pelvic spasms. (R. 1138.)

On March 17, 2021, Plaintiff's primary care physician, Dr. Carroll, wrote a letter opinion that Plaintiff had developed problems resulting in restrictions after her surgery on February 26, 2021. (R. 1207.) Dr. Carroll wrote:

> Recently, [Plaintiff] has developed a cystocele and a rectocele and in February of 2021 she underwent a complex surgery to repair the cystocele and rectocele as well as a vaginal hysterectomy, perineoplasty and colporrhaphy. As a consequence of these procedures she has pelvic floor dysfunction with persistent fecal and urinary constipation, resulting in frequent soilage and the need to change her garments every 2-3 hours. This is extremely embarrassing to [Plaintiff] and prevents her from being able to interact with the public. She has restrictions since her surgery that she is not to bend, lift or lean from side to side. Her limitations and symptoms are expected to last more than 12 months and may be permanent. Medical disability therefore advisable for [Plaintiff].

(*Id.*)

### III. THE ALJ'S DECISION

The ALJ issued her decision on April 2, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 12–55.) The ALJ initially noted that Plaintiff met the insured status requirements for her DIB application through September 30, 2006. (R. 17.) The ALJ then proceeded through the sequential evaluation process.[4] At step one of that process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 10, 2002, her alleged date of onset. (R. 18.) At steps two and three, the ALJ found that from her alleged date of onset through her date last insured (*i.e.*, July 10, 2002, through September 30, 2006), Plaintiff had no severe impairments or combination of impairments that met or medically equaled a listed impairment, and thus she was not disabled for purposes of her DIB application. (*Id.*)

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The ALJ, however, found that for purposes of her SSI application, Plaintiff had the following severe impairments as of her August 26, 2019 SSI application date: degenerative changes of the lumbar and thoracic spine; osteoarthritis of the knees; left shoulder rotator cuff impingement syndrome; left lower extremity plantar fasciitis; gastrocnemius equinus and degenerative joint disease; esophageal dysmotility; non-obstructing cricopharyngeal hypertrophy; obesity; and depressive, anxiety, and trauma- and stressor-related disorders. (R. 20.) The ALJ further found that Plaintiff did not have a severe impairments or combination of impairments that met or medically equaled a listed impairment as of her August 26, 2019 SSI application date. (R. 25.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 416.967(b). Balancing is limited to no more than frequently. Climbing ramps and stairs, crawling, crouching, kneeling, stooping, operation of foot controls with the left lower extremity, and overhead reaching with the left upper extremity, are each limited to no more than occasionally. She cannot climb ladders, ropes, and scaffolds, and must avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights. Mentally, the claimant retains the capacity to perform tasks that do not require long periods of uninterrupted concentration, such as short cycle tasks, and with no fast production rate pace or strict production requirements. She can work in an environment where major changes are explained in advance and gradually implemented.

(R. 35.) (internal footnote omitted).

At step four, the ALJ determined that Plaintiff had no past relevant work. (R. 47.) At step five, the ALJ relied on testimony from a vocational expert ("VE") to determine that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform, including the representative occupations of cleaner, garment folder, and small parts assembler. (R. 47–49.) The ALJ therefore concluded that

6

Plaintiff had not been under a disability, as defined in the Social Security Act, from her August 26, 2019 SSI application through the date of the determination. (R. 49.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

As previously explained, Plaintiff submits that remand is warranted because the ALJ erred when assessing medical opinion evidence. Specifically, Plaintiff contends that the ALJ erred when assessing opinion evidence from her primary care physician, Dr. Carroll. This contention of error has merit.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[5] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5).

With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, when evaluating the persuasiveness of medical opinions and prior administrative findings, an ALJ must consider the following factors: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

---

[5] Because Plaintiff's applications were filed in 2019, they are subject to regulations that govern applications filed after March 27, 2017.

Although there are five factors, supportability and consistency are the most important, and an ALJ must explain how he or she considered them. §§ 404.1520c(b)(2); 416.920c(b)(2). When considering supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support a medical opinion, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(1); 416.920c(c)(1). When considering consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. §§ 404.1520c(c)(2); 416.920c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. Instead, when an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." §§ 404.1520c(b)(3); 416.920c(b)(3).

Here, the ALJ generally found Dr. Carroll's opinion unpersuasive. (R. 43–44.) The ALJ initially explained that she found that Dr. Carroll's opined lifting, bending, and leaning restrictions persuasive. (*Id*.) The ALJ wrote as follows:

> I find the opinions of the claimant's primary care physician from March 2021 unpersuasive in assessing the claimant's mental and physical functional limitations, restrictions, and residual functional capacity as of the application date (Exhibit 20F). I find that the evidence documents that the claimant has restrictions for bending, lifting, and leaning, as this source opined, and I accommodated these opinions by limiting the claimant to lifting consistently [*sic*] with the requirements of light work with occasional crawling, crouching, kneeling, and stooping, and these opinions are persuasive to that extent.

(*Id*.) The ALJ further determined, however, that the remainder of Dr. Carroll's opinion was not persuasive. She explained as follows:

9

> However, the remainder of these opinions is inconsistent with and unsupported by the totality of the evidence, as discussed above, and unpersuasive to that extent . . . . These opinions are inconsistent with and unsupported by the totality of the evidence, as discussed above, including entirely or mainly normal objective medical evidence and findings . . . . I find that there is no evidence documenting functional limitations and restrictions related to the claimant's gastrointestinal and genitourinary complaints. As noted above, there is no evidence documenting gastrointestinal bleeding (Exhibit 7F/6). The claimant does not experience bowel obstruction (Exhibits 7F/6 and 74). The claimant had negative abdominal x-ray results on one occasion (Exhibit 7F/84). Upper endoscopy results from December 2018 documented normal duodenum, esophagus, and stomach (Exhibit 7F/70). There is no evidence the claimant's bladder or bowel complaints lasted for a continuous period of at least 12 months since the application date. The claimant repeatedly had negative gastrointestinal examination results with normal bowel sounds, and no abdominal distention and pain, constipation, diarrhea, heartburn, and palpable hernia (Exhibits 7F/6, 9F/8, 12F/3–4, 7–8, 12, and 15–16, 13F/9. 45, 70, 77, 101, 112, 130, 160, and 171, and 19F/7, 9, 19, 24, 33, and 38). The claimant denied bladder and bowel incontinence at primary care appointment in September and December 2019, as well as August and September 2020 (Exhibits 12F/3, 7, 12, and 15). The claimant denied bladder and bowel incontinence at physician appointments in August and September 2020 (Exhibit 12F/3, 7, 12). The claimant denied bladder and bowel incontinence at primary care appointments in April and July 2020 (Exhibit 13F/112, 160).
>
> . . . .
>
> The claimant's overactive bladder complaints are first noted in August 2020 (Exhibit 13F/3). The evidence documents that the claimant had good results from her February 2021 surgical procedure, as she endorsed doing well with controlled pain, and was experiencing urinary retention rather than overactive bladder (Exhibit 10/F7–9, 21, 38–39, and 41). The claimant denied dysuria and hematuria at different times (Exhibit 13F/6 and 43). This evidence does not reasonably justify the imposition of functional limitations and restrictions related to the claimant's gastrointestinal and genitourinary complaints. Moreover, I note that the letterhead that this letter is written on reflects that this source is an internal medicine physician, and there is no evidence of specialization in treating gastrointestinal and genitourinary conditions . . . .

(R. 44.)

As this discussion illustrates, the ALJ discounted Dr. Carroll's opinion for several reasons. For instance, the ALJ noted that Dr. Carroll was a doctor of internal medicine instead of

a specialist. (*Id.*) That was an appropriate and seemingly accurate consideration. §§ 404.1520c(c)(4); 416.920c(c)(4).

This discussion also shows that the ALJ discounted Dr. Carroll's opinion because she considered the supportability and consistency factors and found them wanting. But the record does not substantially support the ALJ's supportability and consistency analyses. For example, the ALJ explained that Dr. Carroll's opinion was unsupported and inconsistent because the record showed that Plaintiff "had good results from her February 2021 surgical procedure, as she endorsed doing well with controlled pain, and was experiencing urinary retention rather than overactive bladder." (R. 44.) But substantial evidence does not support that explanation. True, after the surgery on February 26, 2021, Plaintiff indicated that her pain was stable. (R. 1134.) But Plaintiff also reported that she would "tense up" and have acute episodes of pain, and that she had issues with ongoing pain and discomfort. (R. 1134, 1131.)

Moreover, the record reflects that Plaintiff's pelvic floor myalgia/dysfunction worsened after she had a sphincterotomy in July 2020, and that it worsened *again* after her February 26, 2021 surgery. (R. 1138.) Indeed, at least two specialists noted that Plaintiff developed intermittent urinary retention issues after her February 26, 2021 surgery. (R. 1138, 1134, 1135.) Those retention issues prevented Plaintiff from voiding without a catheter, necessitated at least one trip to the ER, and resulted in her receiving perineal trigger point injections to ease her spasms. (R. 1166, 1136, 1147–49, 1138.) Thus, despite the ALJ's suggestion that Plaintiff's urinary retention problems demonstrated that she had overcome her overactive bladder issues, the record suggests that those urinary retention problems presented a new set of concerns. Based on this, it appears that the ALJ mischaracterized the evidence regarding the "good results" of Plaintiff's February 26, 2021 surgery. And given that mischaracterization, the Court cannot

conclude that the ALJ's supportability and consistency determination is supported by substantial evidence. *See Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (remand required, in part, because the ALJ was "selective in parsing the various medical reports"); *Ackles v. Colvin*, No. 3:14cv00249, 2015 WL 1757474, at *6 (S.D. Ohio Apr. 17, 2015) ("The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light."); *Johnson v. Comm'r of Soc. Sec.*, No. 2:16-cv-172, 2016 WL 7208783, at *4 (S.D. Ohio Dec. 13, 2016) ("This Court has not hesitated to remand cases where the ALJ engaged in a very selective review of the record and significantly mischaracterized the treatment notes.").

The ALJ also explained that Dr. Carroll's opinion was inconsistent and unsupported "by the totality of the evidence, as discussed above, including entirely or mainly normal objective medical evidence and findings." (R. 44.) In support, the ALJ cited various findings, including, for instance, evidence that Plaintiff had no gastrointestinal bleeding, a negative abdominal x-ray, and normal findings from an endoscopy. (*Id*.) These findings do not appear to be related to Plaintiff's urogynecological issues. The ALJ also cited records reflecting examinations finding that Plaintiff had no bowel obstruction, normal bowel sounds, no abdominal distention and pain, no constipation, diarrhea, heartburn, and no palpable hernia. (*Id*.) Again, it is unclear if these examination findings are related to Plaintiff's urogynecological issues, including vaginal and rectal prolapse. In any event, these findings were primarily from examinations that took place *prior* to Plaintiff's February 26, 2021 surgery. (*Id*. citing R. 494, 631, 671–72, 675–76, 680, 683–84, 703, 739, 764, 771, 795, 806, 824, 854.) This is notable because Dr. Carroll's opinions were related to issues that Plaintiff developed "as a consequence" of that February 26, 2021

12

surgery. (R. 1207.) And to the extent the ALJ included citations to post-operative records, as explained above, that citation appears to mischaracterize Plaintiff's post-operative condition.

The Commissioner also argues that the ALJ's evaluation of Dr. Carroll's opinions was proper, in part, because the ALJ also assessed the state agency reviewers' prior administrative findings and apparently found them to be more persuasive than Dr. Carroll's opinion. (Def.'s Mem. in Opp'n 6–8, ECF No. 10.) Those prior administrative findings from November 2019 and May 2020 also pre-dated Plaintiff's February 26, 2021 surgery. (R. 104–06, 118–20, 130–32, 140–42.) The ALJ indicated, however, that evidence received into the record after the reviewers' findings, which included records related to Plaintiff's surgery, did not provide "credible or objectively supported new and material information" that would have altered those findings. (R. 43.) But given the ALJ's mischaracterizations of the records related to results of Plaintiff's surgery, the Court cannot find that this determination is supported by substantial evidence. Although a more accurate description of Plaintiff's post-operative condition may well have led to the same conclusion, the Court is forced to speculate about the impact that a more accurate depiction may have had. For that reason, Plaintiff's contention of error has merit and requires remand.

V.     CONCLUSION

In sum, for the reasons set forth above, the Commissioner's non-disability determination is **OVERRULED**, and this matter is **REMANDED** pursuant to Sentence 4 § 405(g).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE